UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| INSURANCE BROKERS WEST, INC., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>LIQUID OUTCOME, LLC f/k/a )<br>ASTONISH RESULTS, LLC d/b/a )<br>INTYGRAL )<br>      Defendant. )<br>) | C.A. 1:16-cv-00572-M-PAS |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Insurance Brokers West, Inc., ("IBW") brought this suit against Defendant Liquid Outcome, LLC, f/k/a Astonish Results, LLC, d/b/a INTYGRAL ("Astonish"), alleging that Astonish breached its contract to provide IBW with digital marketing products and services as set forth in a marketing agreement ("Agreement") and a subsequent amendment to the marketing agreement ("Amendment"). Pursuant to Fed. R. Civ. P. 12(b)(1), Astonish moved to dismiss IBW's First Amended Complaint (ECF No. 7) for lack of jurisdiction, arguing that IBW does not meet the amount-in-controversy requirement. ECF No. 9-1 at 5–11. Astonish also moved to strike the jury demand because IBW agreed to a jury-waiver provision in the Agreement. *Id.* at 11–15. Because the Court finds that the

Amendment precludes IBW from seeking damages in excess of $22,500, IBW fails to meet the amount-in-controversy requirement for diversity jurisdiction.[1]

## BACKGROUND

IBW is an insurance agency based in California, and Astonish is a Delaware marketing services provider based in Rhode Island. ECF No. 7 at ¶1–2. IBW and Astonish entered into the Agreement in December of 2010. ECF No. 9-2 at 14–15. IBW alleges that, according to the Agreement, Astonish agreed to provide digital marketing services, including website design and development, and IBW agreed to pay Astonish for those services. ECF No. 7 at ¶8–9. In December of 2014, IBW and Astonish executed the Amendment, where Astonish agreed to "complete a website theme-based redesign and website content re-optimization." ECF No. 9-2 at 35. The payment provision in the Amendment ("Reduction Provision") provided for thirteen payments of $1,350 and five payments of $1,000, thus totaling $22,550. ECF No. 9-2 at 35.

The Agreement included a jury-waiver provision, *id.* at 15, and the Amendment contained a release ("Release") for "any and all claims, actions, damages, and losses" that occurred before IBW and Astonish executed the Amendment, *id.* at 34. Following the execution of the Amendment, Astonish sold its assets to Zywave in July of 2015. ECF No. 7 at ¶12. Zywave and Astonish agreed that Zywave would provide services to Astonish's then-clients, but IBW was not a party to this agreement. *Id.* at ¶14–15. Moreover, IBW asserts that Zywave did not

---

[1] The Court does not reach the merits of Astonish's Motion to Strike, since the action is dismissed for want of subject matter jurisdiction.

provide IBW with the products and services in the Agreement or Amendment. *Id.* at ¶16.

IBW filed this suit against Astonish seeking damages, declaratory judgment, and attorneys' fees under a breach of contract cause of action. ECF No. 1 at ¶¶61–71. Astonish originally moved to dismiss for lack of jurisdiction and, in the alternative, to strike IBW's demand for a jury trial. ECF No. 6-1. In response, IBW filed its First Amended Complaint, alleging $140,000 in damages. ECF No. 7 at ¶66. Claiming that IBW does not meet the amount-in-controversy requirement and waived its right to a jury trial, Astonish again filed its Motion to Dismiss and Motion to Strike the First Amended Complaint. ECF No. 9-1. According to its Motion, Astonish disputes IBW's ability to claim damages in excess of $75,000 because the Amendment limits damages to conduct that occurs after the Amendment. And even if IBW meets the amount-in-controversy requirement, Astonish submits that IBW is not entitled to a jury trial given the contracted jury waiver. ECF No. 9-1 at 11–15. IBW filed its Objection to Defendant's Motion to Dismiss and Motion to Strike. ECF No. 12. In its objection, IBW contends that, because the Amendment was breached, the Release does not limit damages to post-Amendment conduct. *Id.* at 3. Additionally, IBW posits that jury waivers remain unenforceable under the Rhode Island Constitution because Rhode Island does not have legislation that permits jury waiver. *Id.* at 5. Astonish filed its Reply. ECF No. 14.

## STANDARD OF REVIEW

As a court of limited jurisdiction, this Court may not—absent subject matter jurisdiction—proceed with an action. *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 21 (1st Cir. 2016). The party invoking jurisdiction bears the burden of establishing the jurisdictional requirements. *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 116 (1st Cir. 2016).

When ruling on a challenge to the sufficiency of jurisdictional facts, the Court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). In contrast, when ruling on the accuracy of jurisdictional facts—that is, a "factual challenge"—the Court provides "no presumptive weight" to the jurisdictional allegations, but instead "address[es] the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Valentin*, 254 F.3d at 363. The Court retains broad discretion "to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.*

## DISCUSSION

IBW's Amended Complaint seeks $140,000 in damages because Astonish allegedly failed to provide digital marketing services as set forth in the Agreement and Amendment. ECF No. 12-1 at 2–3. Astonish argues that IBW's Amended Complaint does not meet the amount-in-controversy requirement for diversity jurisdiction because the Reduction Provision in the Amendment provides for a

maximum of $22,500 in damages. ECF No. 9-1 at 7. And to the extent that IBW seeks damages for pre-Amendment damages, the Amendment, Astonish contends, releases Astonish from those claims. *Id.* at 6. The Release provides:

> From and after the date hereof [IBW] agrees it will not sue for any reason and hereby releases and forever discharges Astonish from any and all claims, actions, damages, and losses whatsoever known and unknown as of the date of this Amendment, except those claims which occur in the future as a result of a material default in Astonish's performance of this Amendment.

ECF No. 9-2 at 34. IBW reasons that, because Astonish breached the Amendment, IBW can recover pre-Amendment damages. ECF No. 12-1 at 4.

"[T]he party seeking to invoke jurisdiction . . . has the burden of showing that [it] has met the statutory requirements." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001). Generally, the amount of damages alleged by the invoking party "will control the amount in controversy for jurisdictional purposes" as long as the claim is made "in good faith." *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995). An invoking party demonstrates good faith by showing that "'to anyone familiar with the applicable law this claim could objectively have been viewed as worth' more than the jurisdictional minimum." *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 43 (1st Cir. 2012) (quoting *Coventry Sewage Assocs.*, 71 F.3d at 6).

If the opposing party, however, challenges the amount in controversy alleged, then the proponent must "allege with 'sufficient particularity' facts that in some way support" the minimum jurisdictional amount. *Id.* at 42. The opponent will succeed in a challenge if, on the face of the complaint, it appears to a legal certainty

5

that the required amount in controversy cannot be met. *CE Design Ltd. v. Am. Econ. Ins. Co.*, 755 F.3d 39, 43 (1st Cir. 2014).

At issue here is whether IBW's First Amended Complaint alleges the amount in controversy in good faith supported with sufficiently particular facts. The viability of IBW's amount-in-controversy allegation turns on contract interpretation—i.e., whether IBW may pursue pre-Amendment damages upon breach of the Amendment.

As stated in the terms and conditions of the Agreement, the parties agreed that the "Agreement shall be governed by, and construed in accordance with the laws of the State of Rhode Island excluding its conflict of laws rule." ECF No. 9-2 at 14. According to the Rhode Island Supreme Court, "[a] release is a contractual agreement governed by the principles of contract law." *Takian v. Rafaelian*, 53 A.3d 964, 974 (R.I. 2012). "[T]he validity of a release must be determined in light of three factors: (1) the existence of consideration for the release, (2) the experience of the person executing the release, and (3) the question of whether the person executing the release was represented by counsel." *Miller v. Metro. Prop. & Cas. Ins. Co.*, 111 A.3d 332, 340 (R.I. 2015) (quoting *Guglielmi v. R.I. Hosp. Trust Fin. Corp.*, 573 A.2d 687, 689 (R.I. 1990)). If these three questions are answered in the affirmative, "the court will find a release to be valid and binding unless it has been procured through fraud, misrepresentation, overreaching, or a material mistake on the part of either party." *Id.* at 340–41 (quoting *Guglielmi*, 573 A.2d at 689). IBW does not challenge the validity of the Release, only the construction of the Release.

The Court does not interpret the language of the Release; it need only apply it. *High Steel Structures, Inc. v. Cardi Corp.*, 152 A.3d 429, 435 (R.I. 2017). When the Court finds that the terms of the contract are "clear and unambiguous," the Court simply applies the terms of the contract as written. *OSJ of Providence, LLC v. Diene*, No. No. 2016–14–Appeal, 2017 WL 728165, at *2 (R.I. Feb. 24, 2017). In determining whether the terms are "clear and unambiguous," the Court views the contract in its entirety and applies the "plain, ordinary and usual meaning" to the words of the contract. *Id.*

The Release at issue clearly and unambiguously prevents IBW from pursuing claims for pre-Amendment conduct. The Release states that IBW "agrees it will not sue for any reason and hereby releases and forever discharges Astonish from any and all claims, actions, damages, and losses whatsoever known and unknown as of the date of this Amendment." ECF No. 9-2 at 34. There can be no question that this clause prevents any action by IBW for pre-Amendment claims. The second clause of the Release contains an exception for future claims: "except those claims which occur in the future as a result of a material default in Astonish's performance of this Amendment." *Id.* This clause, when read in context with the proceeding clause as well as the contract as a whole, only allows actions for future material breaches to the Amendment. The Court's interpretation is unambiguous and thus "a question of law." *Nuzzo v. Nuzzo Campion Stone Enterprises, Inc.*, 137 A.3d 711, 716 (R.I. 2016) (quoting *B.S. Int'l Ltd. v. JMAM, LLC*, 13 A.3d 1057, 1063 (R.I.

2011)). Because IBW and Astonish contracted for this very scenario, those terms control.

IBW urges the Court to interpret the second clause of the Release to allow claims for pre-Amendment damages. In support of this theory, IBW reasons that, because the second clause allows for future claims and part of the consideration of the Amendment is the Release, a breach of the Amendment entitles IBW to pursue pre-Amendment damages. ECF No. 12-1 at 4. As discussed above, the plain words of the contract do not support this reading. Furthermore, the Release took effect upon the signing of the contract. ECF No. 9-2 at 34–35 (establishing that the Amendment is executed on December 30, 2014); *see generally* Restatement (Second) of Contracts § 284 (outlining when a release takes effect). And a material breach does not retroactively invalidate past performance under the contract. *Cf. Women's Dev. Corp. v. City of Cent. Falls*, 764 A.2d 151, 158 (R.I. 2001) ("A party's material breach of contract justifies the nonbreaching party's *subsequent nonperformance* of its contractual obligations." (emphasis added)).

The remedy that IBW seeks for its breach of contract claim is damages. In limited circumstances, a court may however, as a matter of equity, rescind the contract. *See* Restatement (Third) of Restitution and Unjust Enrichment § 54 cmt. a. ("As a further requirement, the proponent of rescission must show that the unwinding of performance (as opposed to a remedy by money judgment) is both feasible and equitable on the facts of the case."). Yet, IBW neither pled nor argued for rescission of the contract.

Instead, IBW contends that "well-established law" allows a party to assert released claims if the released party breaches the agreement containing the release. ECF No. 12-1 at 4. The cases cited, however, simply do not lend support. *Shanley v. Cadle* simply stood for the proposition that the parties to a settlement agreement may sue to enforce the terms of the agreement. 573 F. App'x 6, 10 (1st Cir. 2014). *Warner v. Rossignol*, 513 F.2d 678 (1st Cir. 1975), likewise, offers no help, as the facts are readily distinguishable. After a jury determined liability, the parties in *Warner* entered into a compromise agreement as to damages in the lawsuit, but the agreement had not yet been consummated. *Id.* at 682. The First Circuit reasoned that the parties' actions indicated that the stipulation of dismissal only took effect upon receipt of payment, so the compromise agreement may be rescinded upon repudiation or a material breach. *Id.* at 683. Because the Release in the present matter was not an unexecuted compromise agreement, *Warner* is apropos of nothing.

Having determined that IBW may not pursue damages for pre-Amendment claims, the Court must dismiss this action for want of jurisdiction. While the amount-in-controversy requirement is an exceedingly low standard, the Reduction Provision in the Amendment conclusively demonstrates that the damages in this dispute do not exceed $75,000. Rhode Island contract law allows a court to award damages based on expectation interest—that is, "damages for breach of contract to place the injured party in as good a position as if the parties fully performed the contract." *Tarro v. Checrallah*, 60 A.3d 598, 602 (R.I. 2013) (quoting *Sophie F.*

9

*Bronowiski Mulligan Irrevocable Trust v. Bridges*, 44 A.3d 116, 120 (R.I. 2012)). While it is conceivable that IBW's expectation damages exceed $75,000—the services that Astonish allegedly failed to render could have been expected to yield an increase in business to IBW that exceeds $75,000—the Court does not engage in these speculative musings. The only basis for damages exceeding $75,000 is premised upon access to pre-Amendment claims, which this Court has already rejected. IBW has the burden of establishing the jurisdictional amount, *Wal-Mart P.R., Inc.*, 834 F.3d at 116, and it has not met this burden.

## CONCLUSION

In summation, IBW released its pre-Amendment claims and, therefore, cannot pursue damages for those claims. The claims that IBW may pursue—post-Amendment claims—do not exceed $75,000. For this reason, IBW fails to meet the amount-in-controversy requirement for diversity jurisdiction. Accordingly, the Court GRANTS Astonish's Motion to Dismiss for Lack of Jurisdiction. ECF No. 9.

SO ORDERED:

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge

Date: March 15, 2017